**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CASE NO.: 26-56638-jwc |
| | : | |
| WILLIE JAMES DUKES, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION FOR RULE 2004 PRODUCTION OF DOCUMENTS**

Now comes The Huntington National Bank, as successor by merger to Cadence Bank ("Huntington"), by and through its undersigned counsel, and respectfully moves this Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004-1 for an order directing the Debtor to produce documents to Huntington. In support of this Motion, Huntington states as follows:

1. Huntington is a creditor in this bankruptcy case. Huntington has not yet filed a proof of claim in this case.

2. On May 19, 2026 (the "Petition Date"), Willie James Dukes (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code to commence the above-referenced case.

3. On or about May 19, 2025, Dukes Logistics LLC ("Dukes Logistics") and Huntington entered into a Loan Agreement that recited terms by which Huntington would make a loan to Dukes Logistics (the "Agreement"). A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

4. In connection with the Agreement, on or about May 19, 2025, Dukes Logistics executed a Note in the original principal amount of $500,000.00 in favor of the Huntington (together with all amendments and modifications, the "Note"). A true and accurate copy of the Note is attached hereto as **Exhibit B**.

5. The Debtor executed an Unconditional Guarantee (the "Guarantee") by which the Debtor unconditionally guaranteed payment of all amounts owing under the Note. A true and accurate copy of the Guarantee is attached hereto as **Exhibit C**.

6. As security for the obligations under the Guarantee, on May 19, 2025, the Debtor and non-debtor Marilyn Dukes executed a Deed to Secure Debt (the "Deed to Secure Debt") concerning the real property commonly known as 228 Swanson Road, Fayetteville, Georgia 30214 (the "Real Property"). A copy of the Deed to Secure Debt is attached hereto as **Exhibit D**.

7. The Debtor and non-debtor Marilyn Dukes also granted Huntington an assignment of leases and rents affecting the Real Property as additional security. A true and accurate copy of the assignment is attached hereto as **Exhibit E**.

8. The loan went into default within approximately twelve (12) months of its origination. The loan originated on or about May 19, 2025, and the Debtor filed his Chapter 7 petition on May 19, 2026.

9. Federal Rule of Bankruptcy Procedure 2004 provides that the Court may compel the production of documents or electronically stored information. The production may relate to the debtor's acts, conduct, or property, the debtor's liabilities and financial condition, or to any matter which may affect the administration of the debtor's estate. Fed. R. Bankr. P. 2004(b) and (c).

10. Huntington seeks the requested documents to trace the disposition of the $500,000.00 in loan proceeds; determine whether any proceeds were transferred to the Debtor, non-debtor insiders, or third parties; identify any assets, transfers, claims, or causes of action that may affect the administration of the Debtor's estate; and evaluate Huntington's rights and remedies arising from the Debtor's Guarantee. The requested investigation is warranted because the loan entered default within approximately twelve months after origination. The categories of documents sought are set forth in **Exhibit F** attached hereto.

11. Cause exists for the requested production because the loan entered default within approximately twelve months after origination, the Debtor personally guaranteed the indebtedness and pledged an interest in the Real Property as security, and the disposition of the $500,000.00 in loan proceeds may bear directly on the Debtor's acts, property, liabilities, financial condition, and the administration of this Chapter 7 estate. The requested records are therefore reasonably necessary to trace the loan proceeds, identify any transfers or assets that may affect the estate, and permit Huntington to evaluate its rights and remedies in this case.

12. The document requests are limited to the period beginning with the loan's origination in May 2025 and ending on the Petition Date, and they target records concerning the receipt, use, transfer, and disposition of the loan proceeds and the Debtor's related financial condition. The requests are tailored to the subject matter of this investigation and are not intended to impose an undue burden on the Debtor.

13. Huntington requests that the Court enter an order directing the Debtor to produce the documents requested in **Exhibit F** no later than 2:00 p.m. on September 22, 2026 at the following address: Womble Bond Dickinson (US) LLP, Attn: Noah W. Priest-Goodsett, 1331 Spring Street NW, Suite 1400, Atlanta, GA 30309.

14. Huntington further reserves the right to issue document subpoenas to third parties in connection with this Rule 2004 investigation, if needed. Any document subpoenas issued in connection with an order granting this Motion will provide the recipients at least twenty-one (21) days to produce any responsive documents, pursuant to Local Rule 2004-1(c), such production to be pursuant to Federal Rule of Civil Procedure 45, as made applicable under Federal Rule of Bankruptcy Procedure 9016, including all rights, claims, defenses, and protections afforded thereunder. This is without prejudice to the right of any recipient to file an objection to some or all of the information requested in a document subpoena. If a recipient objects to a document subpoena, it must file an objection within fourteen (14) days from the date of service of the subpoena. Huntington will have fourteen (14) days from the date of any such objection to file a response. To the extent a recipient files a timely objection, the time to respond to the subpoena for the objecting recipient is extended until the disposition of the objection by the Court, but only with respect to the portion of the request(s) to which specific objection has been lodged; provided, however, that the objecting recipient shall fully and completely respond within the time provided above to any specific request to which an objection is not timely filed.

15. A copy of the proposed Order is attached hereto as **Exhibit G**.

WHEREFORE, The Huntington National Bank respectfully prays the Court to grant the following relief:

(1) To require the Debtor to produce the documents requested in **Exhibit F** no later than 2:00 p.m. on September 22, 2026 at the following address: Womble Bond Dickinson (US) LLP, Attn: Noah W. Priest-Goodsett, 1331 Spring Street NW, Suite 1400, Atlanta, GA 30309;

(2) To confirm Huntington's right to issue document subpoenas to third parties on the terms described in paragraph 10 above; and

(3) To grant such other and further relief as the Court deems just and appropriate.

Dated this 14th day of September, 2026

**WOMBLE BOND DICKINSON (US) LLP**

By: */s/ Noah W. Priest-Goodsett*
ARTHUR A. EBBS
State Bar No. 416181
NOAH W. PRIEST-GOODSETT
State Bar No. 918205

1331 Spring Street NW, Suite 1400
Atlanta, GA 30309
Telephone: (404) 879-2423
Email: noah.priest-goodsett@wbd-us.com

*Attorneys for The Huntington National Bank*

# EXHIBIT A

# LOAN AGREEMENT

THIS LOAN AGREEMENT, made and entered into this 19 day of May, 2025, by and between DUKES LOGISTICS LLC ("Borrower"), and CADENCE BANK ("Lender").

W I T N E S S E T H:

WHEREAS, Borrower desires financing on certain assets located on leasehold real property located in Newton County, Georgia, more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof ("Property");

WHEREAS, of even date herewith, Lender and Borrower entered into those certain U.S. Small Business Administration Terms & Conditions wherein the Lender agreed to provide a loan (the "Loan") to Borrower for up to Five Hundred Thousand and No/100 Dollars ($500,000.00) to refinance existing debt, for working capital and loan related closing costs; and

WHEREAS, in order to loan funds to Borrower, Lender enters into this Loan Agreement with Borrower for the purposes herein contained; and

WHEREAS, the loan made hereunder will be secured in part by a first security interest in the Borrower's furniture, removable trade fixtures, equipment, inventory, accounts, accounts receivable, instruments, documents, chattel paper and general intangibles located at the Property or wherever located.

NOW, THEREFORE, for and in consideration of the premises, the sum of Ten ($10.00) Dollars and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I

## AMOUNT AND TERMS OF LOAN

1.1 RECITALS. Each of the above recitals are hereby incorporated into and made a part of this Agreement by this reference.

1.2 LOAN AND NOTE. The term "Loan" herein shall refer to the indebtedness of Borrower to Lender evidenced by a Note in the original principal amount of Five Hundred Thousand and No/100 Dollars ($500,000.00) in form satisfactory to Lender (the "Note").

## ARTICLE II

## CONDITION OF LENDING

2.1 CONDITIONS PRECEDENT TO THE LOAN. As a condition precedent to Lender making the Loan, the Borrower shall deliver to Lender on or before the date of the Loan closing, the following, in form and substance satisfactory to Lender:

(a) The Note;

(b) Security Agreement;

(c) UCC-1 Financing Statements;

(d) Unconditional Guarantee of Willie J. Dukes and the Unconditional Limited Guarantee of Marilyn T. Dukes (collectively, the "Guarantor" or "Guarantors") secured by a first priority deed to secure debt on that certain vacant land property located at 228 Swanson Rd, Fayetteville, GA 30214 owned by Willie J. Dukes and Marilyn T. Dukes;

(e) A first lien on that certain 2016 Ford F-150 Truck, VIN #1FTEW1EG7GFC84007;

(f) Evidence satisfactory to Lender of ownership of the Collateral by Borrower free and clear of encumbrances of any kind; and

(g) Such other documents as reasonably may be required by the Lender or Lender's counsel.

The Loan documents as provided above (collectively, the "Loan Documents"), when prepared, shall set forth the matters contained in the Loan Agreement and contain such other provisions as are deemed necessary or desirable by Lender. The form and substance of all such documents must be satisfactory to Lender prior to disbursement by Lender of any of the proceeds of the Loan.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES OF BORROWER

The Borrower represents and warrants to, and agrees with the Lender as follows:

3.1 POWER AND AUTHORIZATION.

(a) The Borrower has authorized the execution and delivery of the Note and all other documents contemplated by this Loan Agreement, and such execution and delivery will not violate any law, or any other agreement to which Borrower is a party.

(b) This Loan Agreement constitutes, and upon execution and delivery thereof, the Note, Security Agreement and the ancillary documents will constitute, legal, valid and binding obligations of the Borrower enforceable against the Borrower.

3.2 FINANCIAL CONDITION. The reports and financial statements of Borrower and Guarantors submitted to Lender in connection with the Loan have been prepared from Borrower's or Guarantors' books and records in accordance with generally accepted accounting principles and practices, consistently applied, and fairly reflect the financial condition of

Borrower and Guarantors for the periods therein defined. No material adverse changes have since occurred.

Except as disclosed in the aforesaid reports and financial statements, Borrower:

(a) Has not incurred any debts, liabilities or other obligations nor committed to incur any debts, liabilities or obligations;

(b) Has no liabilities, direct or contingent;

(c) Has made no investments in, advances to, or guaranties or obligations of any other company, person, firm, corporation, or other entity;

(d) Is not subject to any judgment, nor are there any liens, encumbrances or security interests outstanding against Borrower or any of its properties.

3.3 LITIGATION. There is no litigation, proceeding, claim or dispute pending or threatened against Borrower, the adverse determination of which would materially affect Borrower's ability to repay the loan or otherwise perform hereunder.

ARTICLE IV

COVENANTS BY BORROWER

Until all the obligations of Borrower under this Agreement have been performed and paid in full, Borrower covenants and agrees as follows:

4.1 INSURANCE. Borrower shall maintain or require Guarantors to maintain insurance on the Collateral (hereinafter defined) as described in Article VII hereof in such amounts and against such hazards and liabilities as is customarily maintained by other companies in the same geographical area operating similar businesses or as may be otherwise requested by the Lender. All such policies of insurance shall be in form and substance and with insurance companies satisfactory to Lender, and Borrower shall deliver evidence thereof to Lender upon request. Further, upon request, Lender shall be designated as loss payee or as mortgagee under any such policies, as its interests may appear.

4.2 MAINTENANCE OF BUSINESS AND CORPORATE EXISTENCE. Borrower shall comply with all valid and applicable statutes, ordinances, rules and regulations and shall keep in force and effect all licenses, permits, bonds and franchises necessary for the proper conduct of its business.

4.3 ADVERSE CHANGES AND LITIGATION. Borrower shall immediately inform Lender of any material adverse change in its financial condition, or the financial condition of Guarantors, and shall promptly inform Lender of any litigation or threatened litigation or of the occurrence of any other event or circumstance which might substantially affect the financial condition or business of Borrower or Guarantors.

4.4 MANAGEMENT AND OWNERSHIP. No material adverse change shall be made without the prior written consent of Lender in the management or ownership of Borrower,

or in the manner in which its business is conducted. Said consent shall not be unreasonably withheld by Lender.

4.5 FINANCIAL STATEMENTS. Within one hundred twenty (120) days of Borrower's fiscal year end, Borrower and Guarantors shall furnish to Lender copies of their financial statements. Borrower and Guarantors shall also furnish copies of their income tax returns to Lender within thirty (30) days of filing same and such other additional financial information as Lender may from time to time request.

4.6 OTHER DEBTS. Other than the loan from Lender of even date herein in the principal amount of $500,000.00 and any other debt disclosed to and approved by Lender, the Borrower shall not directly or indirectly incur, create, assume or permit to exist any obligation for payment of borrowed money, excepting only unsecured current liabilities incurred in the ordinary course of business and obligations contemplated by this Agreement, without the express written consent of Lender, which consent shall not be unreasonably withheld. Further, Borrower shall not guarantee the obligations of any person or entity, excepting only obligations contemplated by this Agreement.

4.7 SALE OF COLLATERAL. Borrower shall not sell, lease, transfer or otherwise dispose of any of the Collateral as described in ARTICLE VII hereof, other than in the ordinary course of Borrower's business. If Borrower should desire to sell any of the Collateral, a release price therefor will be determined at the sole discretion of Lender, and upon the sale of that Collateral, the release price will be paid over by Borrower to Lender and applied by Lender to payments due on the Note, in inverse order of the due dates, and Lender shall thereupon release its lien or security interest upon the Collateral sold.

4.8 BULK SALE. The Borrower shall not, without the prior written consent of the Lender, sell, transfer or convey all or any part of its interest in its assets to another entity.

4.9 ENCUMBRANCES. Borrower shall not incur or permit to exist nor allow Guarantors to incur or permit to exist any encumbrance, pledge or lien upon or against any of the Collateral, except:

(a) Liens or security interests required or expressly contemplated or permitted by this Agreement;

(b) Liens for taxes, assessments and other governmental charges not yet due and liens of carriers, warehousemen, mechanics and materialmen incurred in the ordinary course of business for sums not yet due; and

(c) Tax liens which are being contested in good faith.

4.10 TAXES. Borrower shall pay promptly, when due, all taxes, assessments and governmental charges or levies imposed upon the Borrower or upon the income or any property of the Borrower, as well as all claims of any kind (including claims for labor, material, supplies or rent) which, if unpaid, might become a lien upon any or all of the Collateral.

4.11 EXAMINATION OF RECORDS. Borrower shall permit any representative of Lender to examine and to audit any or all of Borrower's books and records and to copy portions thereof, and to visit and inspect any of the Collateral upon receipt of reasonable notification and request.

4.12 SBA TERMS & CONDITIONS. Borrower agrees to comply with all terms and provisions of the SBA Terms & Conditions. This Loan Agreement will automatically be amended to include each and every term and condition of the SBA Terms & Conditions, as may be amended from time to time. In the event of any conflict between the terms of the SBA Terms & Conditions and this Loan Agreement, the SBA Terms & Conditions shall control.

## ARTICLE V

## EVENTS OF DEFAULT

The occurrence of any one or more of the following shall constitute an "Event of Default":

(a) Nonpayment, when due, of any principal, accrued interest, premium, fee or other charge due under the Note.

(b) Default by Borrower in the due observance or performance of any term, covenant, condition or agreement on its part to be performed under this Loan Agreement, the Note, or under any other document contemplated by this Loan Agreement.

(c) If Borrower shall:

(1) Make a general assignment for the benefit of its creditors;

(2) File a voluntary petition in bankruptcy;

(3) Be adjudicated as bankrupt or insolvent;

(4) File any petition or answer seeking, consenting to, or acquiescing in, reorganization, arrangement, composition, liquidation, dissolution or similar relief, under any present or future statute, law or regulation;

(5) File an answer admitting or failing to deny the material allegations of the petition against it for any such relief;

(6) Admit in writing its inability to pay its debts as they mature;

(7) Discontinue business; or

(8) Be unable to pay debts as they become due.

(d) Borrower fails to have vacated or set aside within thirty (30) days of its entry any court order appointing a receiver or trustee for all or a substantial portion of the Borrower's property.

(e) Any warranty, representation or statements made or furnished to Lender by Borrower in connection with the Loan or in connection with this Agreement (including any warranty, representation or statement in the application of Borrower for the Loan or in any accompanying financial statements) or to induce Lender to make the Loan, proves to be untrue, misleading or false in any material respect.

(f) Borrower suffers or permits any lien, encumbrance or security interest to attach to any of its property, except as herein otherwise expressly permitted, or if any judgment shall be entered against Borrower or any attachment shall be made against any property of Borrower, which judgment or attachment shall remain undischarged, unbonded, or undismissed for a period of ten (10) days.

(g) Borrower defaults in the payment of any principal or interest on any obligation to Lender or to any other creditor.

(h) Borrower shall sell, lease, or otherwise transfer or convey any of the Collateral, or any interest therein without Lender's prior written approval, except as herein otherwise expressly permitted.

(i) Borrower defaults under or causes to be revoked any required state or local operating permit or license or defaults under any franchise or license agreement to which it is a party.

## ARTICLE VI

## REMEDIES ON EVENT OF DEFAULT

6.1 DECLARE NOTE DUE. Upon the occurrence of any Event of Default as defined in this Agreement, the Note and Security Agreement, or any other document contemplated by this Agreement, then in any such event, Lender at its option, may declare the entire unpaid balance of the Note to be forthwith due and payable, and thereupon such balance shall become so due and payable without presentment, protest or further demand or notice of any kind, all of which are hereby expressly waived, and Borrower will forthwith pay to Lender the entire principal of and interest accrued on the Note.

6.2 OTHER REMEDIES. Upon the occurrence or discovery of an Event of Default, the Lender shall, in addition to its option to declare the entire unpaid amount of the Note due and payable, at its option:

(a) Move to protect its rights and remedies as a secured party under the Security Agreement, by extrajudicial authority as set forth in that instrument, by action at law or equity, or by any other lawful remedy to enforce payment.

(b) Apply the proceeds from any disposition of the Collateral to the satisfaction of the following items in the order in which they are listed:

(1) The expenses of taking, preserving, insuring, repairing, holding and selling the Collateral, including any legal costs and attorney's fees. If any of the Note shall be referred to an attorney for collection, Borrower and all others liable on the Note, jointly and severally agree to pay reasonable attorney's fees and all costs of collection.

(2) The unpaid amount of any interest due on the Note, and all other expenses of Lender.

(3) The unpaid principal amounts of the Note.

(4) Any other indebtedness of Borrower to Lender.

(5) The remainder, if any, to Borrower, it being understood and agreed that if the proceeds realized from the disposition of the Collateral shall fail to satisfy items (1) through (4) above, Borrower shall forthwith pay any such deficiency to Lender upon demand.

(c) Exercise any and all rights of setoff which Lender may have against any account, fund or property of any kind, tangible or intangible, belonging to Borrower and which shall be in Lender's possession or under Lender's control.

## ARTICLE VII

## COLLATERAL

Borrower's obligation for payment of the Note shall be collateralized by the following (the "Collateral"):

7.1 UCC FINANCING STATEMENTS. A first security interest in all Borrower's furniture, removable trade fixtures, machinery, equipment, inventory, accounts, accounts receivable, instruments, documents, chattel paper and general intangibles now owned or hereafter acquired and wherever located.

7.2 RESIDENTIAL DEED. A first priority deed to secure debt on that certain vacant land property located at 228 Swanson Rd, Fayetteville, GA 30214 owned by Willie J. Dukes and Marilyn T. Dukes.

7.3 VEHICLE. A first lien on that certain 2016 Ford F-150 Truck, VIN #1FTEW1EG7GFC84007.

## ARTICLE VIII

## MISCELLANEOUS

8.1 CLOSING. The Lender shall not be obligated to make the Loan or advance any funds until Borrower has fully met all requirements herein set forth to be met by Borrower, and

until Borrower has paid to Lender and any other parties entitled thereto, all fees and other charges due in connection with the Loan.

8.2 AMENDMENTS. No amendment of any provisions of this Loan Agreement, nor consent to any departure of Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.3 NOTICES. All notices and other communications provided for hereunder shall be in writing and mailed or telegraphed or delivered.

If to Borrower:

DUKES LOGISTICS LLC
155 Trevers Lake Dr
Covington, GA 30016

If to Lender:

CADENCE BANK
2380 Old Milton Parkway
Alpharetta, GA 30009

8.4 GOVERNING LAW AND PARTIES BOUND. This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the State of Georgia.

8.5 ATTORNEY'S FEES AND EXPENSES. If Lender shall incur any cost or expense, including, without limitation, reasonable attorney's fees, in connection with this Agreement, the Note or the Loan, in any manner whatsoever, direct or indirect, whether with regard to the collection of amounts due, protection of Collateral, defense of Lender or otherwise, upon demand by Lender, Borrower shall pay the same or shall reimburse Lender therefor in full.

8.6 ASSIGNMENT BY BORROWER. No commitment issued by Lender to Borrower for the Loan nor any of Borrower's rights hereunder shall be assignable by Borrower without the prior written consent of Lender.

8.7 NO WAIVER: REMEDIES. No failure on the part of the Lender, and no delay in exercising any right under this Loan Agreement, shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Loan Agreement preclude any other or further exercise thereof or the exercise of any other right.

8.8 SEVERABILITY. In the event that any clause or provisions of this Loan Agreement or any document or instrument contemplated by this Agreement shall be held to be invalid by any court of competent jurisdiction, the invalidity of such clause or provision shall not affect any of the remaining portions or provisions of this Loan Agreement.

8.9 TIME. Time is of the essence of this Agreement.

8.10 SPECIAL STIPULATIONS. The Borrower and the Lender covenant and agree that if any prior, current, or future loans or debts, other than the Note, between the Borrower and the Lender (herein, the "Other Debts"), are cross-collateralized and secured through the Loan, and such Other Debts are also secured by any means by a building, structure, or by real estate (herein, the "Secured Property") located in an area designated as a special flood hazard area ("SFHA") by the Administrator of the Federal Emergency Management Agency (herein, the "SFHA Debts"), the following provisions of this Section No. 8.10 will become effective immediately upon such Secured Property becoming located in a SFHA (the "SFHA Date").

Collateral Release: Notwithstanding any language to the contrary in the Loan or any other document related to the Note or other Loan Documents, the Lender releases and disclaims in full that portion of its security interest securing the Note that is comprised of collateral secured by a SFHA Debt document or a SFHA Debt contract or agreement between the Borrower and the Lender. As of the SFHA Date, the Lender shall not retain, via a cross-collateralization provision in any of the Loan Documents or otherwise, a security interest for the Note in any SFHA Debt or the collateral securing any SFHA Debt. No other changes shall be made to the scope of the collateral. Beyond the changes to the scope of the Lender's security interest for the Note rendered by the preceding paragraph of this Section No. 8.10, no other aspect of the Lender's collateral or security interest for the Note, as defined or established by the Loan Documents, is modified by this Section No. 8.10. The provisions of this Section No. 8.10 do not affect, to any extent, the scope of the collateral or security interest securing the Note, other than the changes set forth in the preceding paragraph of this Section No. 8.10. This Section No. 8.10 shall control in the event of any conflicts. To the extent that the scope of the Lender's security interest for the Note, as modified by the provisions of this Section No. 8.10, does not align with the scope of the security interest as defined by any other provision of the Loan Documents, the Borrower and the Lender agree that the provisions of this Section No. 8.10 shall control for all purposes in any conflicts regarding the scope of the Lender's security interest taken for the Note after the date this Loan is executed by the Borrower and the Lender. No other rights or remedies shall be affected. Except as modified herein, nothing shall otherwise impair, alter or diminish the effect, lien or encumbrance of the Loan or other Loan Documents, or any of the rights and remedies of the holder thereof.

The above provisions shall not become effective prior to the SFHA Date.

8.11 SBA LOAN. The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

IN WITNESS WHEREOF, the parties have executed this Loan Agreement as of the date first above written.

**BORROWER:**

Signed, sealed and delivered in the presence of:

DUKES LOGISTICS LLC

By: _______________ (L.S.)
Willie J. Dukes, Member

_______________
Witness

_______________
Notary Public

Sergio G Esteban
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 07/17/2026

**LENDER:**

Signed, sealed and delivered in the presence of:

CADENCE BANK

By: _______________
Name: Sherry Martin
Title: Vice President

_______________
Witness

_______________
Notary Public

Sergio G Esteban
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 07/17/2026

The undersigned hereby expressly agree and consent to all of the terms and conditions contained herein and further agree to be bound by all of the terms and conditions contained herein. This 19 day of May, 2025.

**GUARANTOR:**

_______________ (SEAL)
Willie J. Dukes

**LIMITED GUARANTOR:**

_______________ (SEAL)
Marilyn T. Dukes

**EXHIBIT "A"**

Leasehold property commonly known as 155 Trevers Lake Dr, Covington, Newton County, GA 30016.

# EXHIBIT B

U.S. Small Business Administration

SBA

# U.S. Small Business Administration

# Note

| | |
|---|---|
| **SBA LOAN #** | **7358069109 - SBA received the complete loan application April 7, 2025** |
| **SBA LOAN NAME** | **DUKES LOGISTICS LLC** |
| **DATE** | 5/19, **2025** |
| **LOAN AMOUNT** | **$500,000.00** |
| **INTEREST RATE** | **Wall Street Journal Prime Rate +2.75% (variable)** |
| **BORROWER** | **DUKES LOGISTICS LLC** |
| **OPERATING COMPANY** | **N/A** |
| **LENDER** | **CADENCE BANK** |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Five Hundred Thousand and No/100 Dollars ($500,000.00), interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

1. **Maturity:** This Note will mature in 10 years from date of Note.

2 **Repayment Terms:** If Lender uses its own Note, Lender must comply with the repayment terms set forth below and must ensure the Note is legally enforceable and assignable, has a stated maturity and is not payable on demand. The Note must include the following language:

*"When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law "*

If Lender uses SBA Note, Form 147, Lender must insert into Note, to be executed by Borrower, the following terms, without modification Lender must complete all blank terms on the Note at time of closing

The interest rate on this Note will fluctuate The initial interest rate is 10 25% per year This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2 75% The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10

Borrower must pay principal and interest payments of $6,676 95 every month, beginning two months from the month this Note is dated; payments must be made on the second calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal

The interest rate will be adjusted every calendar quarter (the "change period") beginning July 1, 2025 (date of first rate adjustment)

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs Base Rates will be rounded to two decimal places with 004 being rounded down and 005 being rounded up

The adjusted interest rate will be 2 75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10

The interest rate adjustment period may only be changed in accordance with SOP 50 10

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary

**Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a Give Lender written notice;

b Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice

All remaining principal and accrued interest is due and payable 10 years from date of Note

**Late Charge:** If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and

reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender

may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

Time is of the essence of this Note.

The undersigned Borrower hereby waives the right to require the holder of this obligation to confirm any foreclosure sale as a condition for taking action to collect on this Note.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

DUKES LOGISTICS LLC

By:________________(L.S.)
Willie J. Dukes, Member

# EXHIBIT C

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| **SBA Loan #** | **7358069109** |
| **SBA Loan Name** | **DUKES LOGISTICS LLC** |
| **Guarantor** | **Willie J. Dukes** |
| **Borrower** | **DUKES LOGISTICS LLC** |
| **Lender** | **CADENCE BANK** |
| **Date** | May 19, **2025** |
| **Note Amount** | **$500,000.00** |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated of even date herewith in the principal amount of Five Hundred Thousand and No/100 Dollars ($500,000.00), from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding
payment from Guarantor:

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.
B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co- guarantor with Guarantor. Guarantor has no right of contribution from SBA.
C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral q until the Note is paid in full.
D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

Time is of the essence of this Guarantee.

The undersigned Guarantor hereby waives the right to require the holder of the obligations hereby guaranteed to take action against the debtor as provided in O.C.G.A. § 10-7-24. The Guarantor further waives the right to require the holder to confirm any foreclosure sale as a condition for taking action to collect the guarantee. The undersigned Guarantor hereby waives the right to require any holder of this obligation to confirm any foreclosure sale as a condition for taking action to collect on the Note.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_________________ (SEAL)
Willie J. Dukes

_________________
Notary Public

(please sign and affix seal)

Sergio G Esteban
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 07/17/2026

# EXHIBIT D

Type: SD
Recorded: 5/22/2025 2:50:00 PM
Fee Amt: $25.00 Page 1 of 7
Fayette, Ga. Clerk Superior Court
Sheila Studdard Clerk of Court

**BK 5834 PG 116 - 122**

**PREPARED BY AND AFTER RECORDING RETURN TO:**

Reid H. Harbin, Esq.
Harbin & Miller, LLC
5591 Chamblee Dunwoody Rd.
Building 1300, Suite 200
Dunwoody, GA 30338

**Note to Clerk**: No intangible tax due as this security deed secures personal guarantees only pursuant to Revenue Rule 560-11-8-.14.

Tax Parcel ID #: 0722 106
Maturity Date: May 19, 2035
Loan Amount: $500,000.00
Intangible Tax: -0-

## DEED TO SECURE DEBT

STATE OF GEORGIA

COUNTY OF GWINNETT

THIS INDENTURE, made the 19 day of May, 2025 between Marilyn Dukes and Willie Dukes of the County of Newton and State of Georgia, whose address is 155 Trevers Lake Dr, Covington, GA 30016, as party or parties of the first part, hereinafter collectively called "Grantor", and CADENCE BANK, the address of which is 2380 Old Milton Parkway, Alpharetta, GA 30009, as party of the second part, hereinafter called "Grantee":

W I T N E S S E T H:

That the Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, to secure those certain personal guarantees of a SBA note from Cadence Bank to DUKES LOGISTICS LLC, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, its successors and assigns, the following described property, to-wit:

All that tract or parcel of land lying and being in Fayette County, Georgia, and being more particularly described on **Exhibit "A"** (commonly known as 228 Swanson Rd, Fayetteville, GA 30214) attached hereto and incorporated herein by this reference.

In the event Grantor fails to make each and every subsequent installment payment of any prior security deed or note secured thereby when due and after the expiration of any cure periods, such failure shall constitute a default in this instrument. The default shall give the Grantee hereof an option to declare the entire indebtedness secured immediately due and payable. Further, Grantee shall have the right to proceed to sell the within described property in accordance with the powers of sale contained herein. The Grantee may, in case of Grantor's failure to make the subsequent installment payments of any prior security deed, make such payments as might be required in order that any prior loan deed might not be in default. The Grantor assumes the performance of any and all other obligations or covenants to be performed by the Grantor under any prior security deed so long as the premises or any portion thereof remains subject to the lien of any prior security deed, and any failure by the Grantor to perform will constitute an event of default hereunder.

The Grantor will not, nor seek to, obtain or consummate any increase, extension, postponement, indulgence, release, forgiveness, or modification of any prior security deed or note secured thereby so long as the premises or any portion thereof remains subject to the lien of this Deed to Secure Debt (the "Deed") and any attempt by the Grantor to so do will constitute an event of default hereunder.

In the event of any default by Grantor as above provided, the Grantee herein shall have the right to declare such default and exercise its power to foreclose as provided in the printed portion of this Deed; Grantor further covenants and agrees that it will not transfer title to the above-described property without the prior written consent of the Grantee.

The Grantor does also covenant and agree with Grantee that in the event of any default under any term, condition or provision of any loan document of the loan secured hereby, including a default in this or any other Deed given as security therefore, then there shall be a default under this instrument which shall give the Grantee hereof the right and option to accelerate the maturity of the debt hereby secured and to declare the entire indebtedness secured hereby immediately due and payable and which shall afford the Grantee the right to proceed to sell the within described property in accordance with the powers of sale contained herein.

So long as any of the indebtedness secured hereby shall remain unpaid, Grantor hereby covenants and agrees that any life insurance policies which have been assigned to Grantee by any such policy owners as additional collateral for the payment of the indebtedness secured hereby will be kept in full force and effect and all premiums required to keep such policies in full force will be paid. In the event that such policies are not kept in full force and effect, then such failure shall be considered a default under the terms of this Deed, and Grantee on account of such default shall have the right to accelerate the maturity of the debt hereby secured.

So long as the secured obligation, or any portion thereof, which the within Deed is given to secure remains unpaid, Grantor shall not further encumber, pledge, convey, transfer, or assign in any method or manner, whether voluntary or involuntary, the property or any portion thereof,

subsequent to the date of this Deed, without the prior written consent thereto by Grantee. Any such encumbrance, pledge, conveyance, transfer or assignment shall be considered an event of default under this instrument and shall entitle Grantee to exercise any and all rights and remedies provided herein, or at law or equity, Grantee's failure to exercise rights under this paragraph shall not constitute a waiver thereof.

TO HAVE AND TO HOLD the said bargained premises with all and singular the rights, members and appurtenances thereto appertaining, to the only proper use, benefit and behoof of Grantee its successors and assigns, in fee simple; and Grantor, the said bargained premises, unto Grantee its successors and assigns, against Grantor, and the heirs, executors and administrators of Grantor, and against all and every other person or persons (except as may be otherwise expressly stated herein) shall and will WARRANT AND FOREVER DEFEND.

This conveyance is made under the provisions of Title 44-14-60, et. seq. (Conveyance to Secure Debt) of the Official Code of Georgia Annotated, and upon payment of the debt hereby secured, this security deed shall be cancelled and surrendered pursuant thereto, the debt hereby secured being:

The covenants, obligations, liabilities and undertakings of Grantor under those certain personal guarantees of a SBA note of even date herewith signed by DUKES LOGISTICS LLC, as Maker, and payable to the Grantee herein in the principal amount of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00). The maturity date of the Note and this Deed is May 19, 2035.

It is agreed that the Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the loan secured hereby.

As further security for the debt herein described, Grantor hereby sells, assigns, sets over and transfers to the Grantee all of the rent which shall hereafter become due or be paid for the use of the above described property. Grantor reserves only the right to collect said rents so long as there is no default in the obligations of the Grantor under this Deed or in payment of the debt hereby secured and all cure periods, if any, have expired. In the event of default in said debt or any part thereof, principal or interest, or in the performance of any other obligation of the Grantor under this Deed, Grantee may enter upon said premises and collect the rents therefrom and the Grantee is hereby constituted and appointed as Grantor's agent and attorney-in-fact to collect such rents by any appropriate proceeding. The net amount of rent so collected shall be applied towards the debt hereby secured.

Time being of the essence of this contract, the Grantee shall have the right to accelerate the maturity of the debt hereby secured, by declaring the entire debt to be in default and immediately due and payable, upon the failure of Grantor to make any payment when due pursuant to the instrument hereby secured or upon failure of Grantor to perform any obligation or make any payment required of Grantor by the terms of this Deed after the expiration of all cure periods, if any.

Any Grantor hereby covenants, for so long as the indebtedness or any part thereof shall remain unpaid, to keep the premises in as good condition as they are now; to pay all taxes and

assessments that may be liens upon said premises, as they become due, and keep the improvements on the premises insured in company or companies acceptable to Grantee against loss or damage by fire and lightning, and extended coverage, in the sum of at least an amount equal to the loan amount, with loss, if any, payable to Grantee. Grantor shall deliver the policies of insurance to the Grantee, and any tax, assessment, or premium of insurance not paid when due by the Grantor may be paid by the Grantee, and any sum so paid shall be added to the amount of principal debt, as part thereof, and shall draw interest from the time of payment at the rate of eight percentum per annum, and shall, with interest, be covered by the security of this deed. Should the Grantee receive any money for damages covered by insurance, such money may be retained and applied toward the payment of any amount hereby secured or may be paid over, either wholly or in part to the Grantor to enable Grantor to repair or replace improvements, or for any other purposes, without affecting the lien of this deed for the full amount secured hereby before such damage or such payment took place.

And Grantor further covenants and agrees that the possession of the premises, during the existence of the indebtedness, by Grantor, or any persons claiming under Grantor, shall be that of tenant under Grantee, or its successors and assigns, during the due performance of all the obligations aforesaid. In case of a sale as hereinafter provided, Grantor, or any person in possession under Grantor, shall then become and shall be tenants holding over and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over.

In the event of default in the indebtedness hereby secured, either in due course or by acceleration as herein provided, or in the event of default in the performance of any of the obligations required of the Grantor by the terms of this Deed or provision of any loan document of the loan secured hereby and after the expiration of all cure periods, if any, the Grantee shall be entitled to have a receiver appointed for the property herein described, in connection with or as a part of any proceeding to foreclose this deed or to enforce any of its terms or the collections of all or any part of said debt. Further, Grantor agrees to the appointment of such receiver without proof of insolvency or other equitable grounds and hereby appoints the Grantee as attorney-in-fact with authority to consent for Grantor to the appointment of such receiver.

In case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of a default as herein provided, Grantor hereby grants to Grantee and its successors and assigns the following irrevocable power of attorney: To sell the property at auction in the usual place for conducting sales at the Courthouse in the County where the land or any part thereof lies, in Georgia, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for four weeks preceding such sale (but without regard to the number of days) in a newspaper published in the County in which the Sheriff's advertisements for such County are published, all other notice being waived by Grantor. Grantee shall have the right to offer and sell the property described herein in separate parcels or as a whole. Grantee or any person on behalf of Grantee, or its successors and assigns, may bid and purchase at such sale, and thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of said premises in fee simple, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends. Grantor hereby constitutes and appoints Grantee its successors and assigns, the agent and attorney-in-fact of Grantor to make such recitals, and hereby covenants and agrees that the

recitals so to be made by Grantee, or its successors or assigns, shall be binding and conclusive upon Grantor, and the heirs, executors, administrators and assigns of Grantor, and that the conveyance to be made by Grantee or assigns, shall be effectual to bar all equity of redemption of Grantor, or the successors in interest of Grantor, in and to said premises. Grantee or assigns shall collect the proceeds of such sale, and after reserving therefrom the entire amount of principal and interest due, together with the amount of any taxes, assessments and premises of insurance or other payments theretofore paid by Grantee, with interest as provided in the note hereby secured from date of payment, together with all costs and expenses of sale and fifteen percentum of the aggregate amount due for attorney's fees, shall pay any over-plus to Grantor, or to the heirs or assigns of Grantor as provided by law.

The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collections of said indebtedness provided by law.

**WAIVER OF BORROWER'S RIGHTS**

**BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.**

**READ AND AGREED BY GRANTOR:** WLD (initials) MD (initials)

This Deed to Secure Debt will be governed by, construed and enforced in accordance with federal law and laws of the State of Georgia, without regard to its principles of conflicts of laws.

The Grantor and the Grantee covenant and agree that if any prior, current, or future loans or debts, other than the note, between the Grantor and the Grantee (herein, the "Other Debts"), are cross-collateralized and secured through the loan, and such Other Debts are also secured by any means by a building, structure, or by real estate (herein, the "Secured Property") located in an area designated as a special flood hazard area ("SFHA") by the Administrator of the Federal Emergency Management Agency (herein, the "SFHA Debts"), the following provisions of this section will become effective immediately upon such Secured Property becoming located in a SFHA (the "SFHA Date").

Collateral Release: Notwithstanding any language to the contrary in the loan or any other document related to the note or other loan documents, the Grantee releases and disclaims in full that portion of its security interest securing the note that is comprised of collateral secured by a SFHA Debt document or a SFHA Debt contract or agreement between the Grantor and the Grantee. As of the SFHA Date, the Grantee shall not retain, via a cross-collateralization provision in any of the loan documents or otherwise, a security interest for the note in any SFHA Debt or the collateral securing any SFHA Debt. No other

changes shall be made to the scope of the collateral. Beyond the changes to the scope of the Grantee's security interest for the note rendered by the preceding paragraph of this section, no other aspect of the Grantee's collateral or security interest for the note, as defined or established by the loan documents, is modified by this section. The provisions of this section do not affect, to any extent, the scope of the collateral or security interest securing the Note, other than the changes set forth in the preceding paragraph of this section. This section shall control in the event of any conflicts. To the extent that the scope of the Grantee's security interest for the note, as modified by the provisions of this section, does not align with the scope of the security interest as defined by any other provision of the loan documents, the Grantor and the Grantee agree that the provisions of this section shall control for all purposes in any conflicts regarding the scope of the Grantee's security interest taken for the note after the date this loan is executed by the Grantor and the Grantee. No other rights or remedies shall be affected. Except as modified herein, nothing shall otherwise impair, alter or diminish the effect, lien or encumbrance of the loan or other loan documents, or any of the rights and remedies of the holder thereof.

The above provisions shall not become effective prior to the SFHA Date.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Grantee or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

IN WITNESS WHEREOF, Grantor has hereto set their hands and seals the day and year first above written.

Signed, sealed and delivered in the presence of:

[signature]
Witness

[signature]
Notary Public (affix seal and commission expiration date)

Sergio G Esteban
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 07/17/2026

GRANTOR:

[signature] (SEAL)
Marilyn Dukes

[signature] (SEAL)
Willie Dukes

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 76, 77 and 84 of the 7th District, of Fayette County, Georgia, and being Lot 2, of McNiel Farms Subdivision, Phase 2, as per plat recorded in Plat Book 47, pages 168-171, Fayette County, Georgia records; which plat is incorporated herein and made a part hereof.

# EXHIBIT E

Type: ASGN
Recorded: 5/22/2025 2:50:00 PM
Fee Amt: $25.00 Page 1 of 5
Fayette, Ga. Clerk Superior Court
Sheila Studdard Clerk of Court

**BK 5834 PG 123 - 127**

**PREPARED BY AND AFTER RECORDING RETURN TO:**

REID H. HARBIN, ESQ.
HARBIN & MILLER, LLC
5591 Chamblee Dunwoody Rd.
Building 1300, Suite 200
Dunwoody, Georgia 30338

CADENCE BANK

Tax Parcel ID #: 0722 106

**ASSIGNMENT OF LEASES AND RENTS**

KNOW ALL PERSONS BY THESE PRESENTS, that

WHEREAS, Marilyn Dukes and Willie Dukes, whose address is 155 Trevers Lake Dr, Covington, GA 30016 (hereinafter collectively referred to as the "Grantor"), said Grantor being the fee owner of premises situated in the County of Fayette, State of Georgia, and described as follows:

See **Exhibit "A"** (commonly known as 228 Swanson Rd, Fayetteville, GA 30214) attached hereto and made a part hereof (the "Premises").

AND, WHEREAS, CADENCE BANK, having its principal place of business at 2380 Old Milton Parkway, Alpharetta, GA 30009 (hereinafter referred to as the "Grantee"), is the owner and holder of that certain SBA Note of even date herewith in the original principal sum of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00) secured by the Security Agreement, Deed to Secure Debt as additional collateral for personal guarantees and UCC Financing Statements (the SBA Note, Security Agreement, Deed to Secure Debt as additional collateral for personal guarantees and UCC Financing Statements are hereinafter collectively referred to as the "Loan Documents") evidencing a loan to DUKES LOGISTICS LLC (the "Borrower") in the amount of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00); and

WHEREAS, Grantee, as a condition to making the loan, has required an assignment of the leases and rents affecting the Premises as additional security for said loan and for the performance by Grantor of each and all of Grantor's obligations, covenants, promises and agreements as set forth in the Loan Documents between the parties hereto bearing even date herewith, in this Assignment, and in any other instrument securing said loan, and any extensions, modifications and renewals thereof;

NOW THEREFORE, in consideration of Grantee making said loan, Grantor hereby grants, assigns, transfers and sets over unto Grantee all right, title and interest of Grantor in and to all rents, issues and profits from or affecting the Premises described herein, together with Grantor's right, title and interest in and to any and all leases for the use and occupation of the Premises described herein, which are now in existence or which may be executed in the future during the term of this Assignment.

Grantee, by acceptance of this Assignment, covenants and agrees to and with Grantor, that, until a default shall occur in the performance of Grantor's covenants or in the making of the payments provided for in the Loan Documents, or any other instrument securing the balance due (and, in each case, after the expiration of all cure periods, if any), Grantor may receive, collect and enjoy the rents, issues and profits accruing under said leases but it is covenanted and agreed by Grantor that, upon the happening of any default in the performance of the covenants or in the making of the payments provided for in the Loan Documents, or any other instrument securing the balance due, bearing even date herewith, Grantee may, at its option, receive and collect all the said rents, issues and profits in the name of Grantor or in its own name as assignee.

Grantor, in the event of default in any of the payments or in performance of any of the terms, covenants or conditions of the Loan Documents, or any other instrument securing the balance due and, in each case, after the expiration of all cure periods, if any, hereby authorizes and empowers Grantee, at its option, to enter upon the said Premises by its officers, agents or employees for the collection of the rents and for the operation and maintenance of said Premises; Grantor hereby authorizes Grantee in general to perform all acts necessary for the operation and maintenance of said Premises in the same manner and to the same extent that Grantor might reasonably so act. Grantee shall, after payment of all proper charges and expenses, credit the net amount of income which it may receive by virtue of the within Assignment and from the Premises, to any amounts due Grantee from Grantor under the terms and provisions of the Loan Documents, and any other instrument securing the balance due. The manner of the application of such net income and the items which shall be credited shall be within the sole discretion of Grantee. While acting pursuant to this Assignment, Grantee shall not be liable for failure to collect rents, but may make reasonable efforts to collect rents, reserving, however, within its own discretion, the right to determine the method of collection and the extent to which enforcement of collection of delinquent rents shall be prosecuted.

Grantor hereby covenants and warrants to Grantee that Grantor has not executed any prior assignment of said leases or rentals, nor has Grantor performed any acts or executed any other instrument which might prevent Grantee from operating under any of the terms and conditions of this Assignment, or which would limit Grantee in such operations. Grantor covenants not to collect the rents of said Premises in advance, other than as required to be paid in advance by the terms of



https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=88872203&key1=5834&key2=123&county=56&countyname=FAYETTE&userid=136&appid=4 2/5

any rental agreement, and further agrees not to do any other act which would destroy or impair the benefits to Grantee of this Assignment.

Grantor hereby irrevocably authorizes and directs the tenants and any successor to their interests, upon receipt of any written request of Grantee stating that a default exists in the payments due under or in the performance of any of the terms, covenants or conditions of the Loan Documents, or any other instrument securing the balance due, to pay to Grantee the rents due and to become due under the leases. Grantor agrees that each tenant shall have the right to rely upon any such statement and requests without any obligation or right to inquire as to whether such default actually exists, notwithstanding any notice from or claim of Grantor to the contrary. Grantor shall have no right to claim against the tenants for any such rents so paid by tenant to Grantee. Upon the curing of all defaults, Grantee shall give written notice thereof to each tenant; and thereafter, until the possible receipt of any further similar written requests of Grantee, tenants shall pay the rents to Grantor.

Nothing herein shall be construed so as to deprive Grantee of any of its rights under the provisions of the Loan Documents, or any other instrument securing the balance due, whether or not it exercise its rights under this Assignment.

This Assignment will be governed by, construed and enforced in accordance with federal law and laws of the State of Georgia, without regard to its principles of conflicts of laws.
The Grantor and the Grantee covenant and agree that if any prior, current, or future loans or debts, other than the SBA Note, between the Grantor and the Grantee (herein, the "Other Debts"), are cross-collateralized and secured through the Loan, and such Other Debts are also secured by any means by a building, structure, or by real estate (herein, the "Secured Property") located in an area designated as a special flood hazard area ("SFHA") by the Administrator of the Federal Emergency Management Agency (herein, the "SFHA Debts"), the following provisions of this section will become effective immediately upon such Secured Property becoming located in a SFHA (the "SFHA Date").

Collateral Release: Notwithstanding any language to the contrary in the Loan or any other document related to the SBA Note or Loan Documents, the Grantee releases and disclaims in full that portion of its security interest securing the SBA Note that is comprised of collateral secured by a SFHA Debt document or a SFHA Debt contract or agreement between the Grantor and the Grantee. As of the SFHA Date, the Grantee shall not retain, via a cross-collateralization provision in any of the Loan Documents or otherwise, a security interest for the SBA Note in any SFHA Debt or the collateral securing any SFHA Debt. No other changes shall be made to the scope of the collateral. Beyond the changes to the scope of the Grantee's security interest for the SBA Note rendered by the preceding paragraph of this section, no other aspect of the Grantee's collateral or security interest for the SBA Note, as defined or established by the Loan Documents, is modified by this section. The provisions of this section do not affect, to any extent, the scope of the collateral or security interest securing the Note, other than the changes set forth in the preceding paragraph of this section. This section shall control in the event of any conflicts. To the extent that the scope of the Grantee's security interest for the SBA Note, as modified by the provisions of this section, does not align with the scope of the security interest as defined by any other provision of the Loan Documents, the Grantor and the Grantee agree that the provisions of this section shall control for all purposes in any conflicts regarding the scope of the Grantee's security interest taken for the SBA Note after the date this Loan is executed by the

Grantor and the Grantee. No other rights or remedies shall be affected. Except as modified herein, nothing shall otherwise impair, alter or diminish the effect, lien or encumbrance of the Loan or other Loan Documents, or any of the rights and remedies of the holder thereof.

The above provisions shall not become effective prior to the SFHA Date.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Grantee or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

A release of said Deed to Secure Debt securing the guarantees of Grantor shall automatically constitute and be considered as an effective and complete release of this Assignment.

Dated: 5/19, 2025.

Signed, sealed and delivered in the presence of:

Witness

Sergio G Esteban
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 07/17/2026

Notary Public (affix seal and commission expiration date)

GRANTOR:

(SEAL)
Marilyn Dukes

(SEAL)
Willie Dukes

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 76, 77 and 84 of the 7th District, of Fayette County, Georgia, and being Lot 2, of McNiel Farms Subdivision, Phase 2, as per plat recorded in Plat Book 47, pages 168-171, Fayette County, Georgia records; which plat is incorporated herein and made a part hereof.

# EXHIBIT F

# EXHIBIT F

## DOCUMENT REQUESTS

1) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Dukes Logistics LLC for each and every month from May 2025 (loan origination) through and including the Petition Date (May 19, 2026).

2) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Willie J. Dukes for each and every month from May 2025 through and including the Petition Date.

3) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Marilyn T. Dukes for each and every month from May 2025 through and including the Petition Date.

4) Copies of all bank account check registers, ledgers, and journals detailing account activity maintained by Dukes Logistics LLC for the time period of May 2025 through and including the Petition Date.

5) Documentation identifying and evidencing all disbursements, transfers, or distributions of the $500,000.00 loan proceeds, including the date, amount, source account, and destination account/payee, and the purpose of each disbursement.

6) Copies of any payoff statements, invoices, or other documentation evidencing the "existing debt" refinanced with loan proceeds as referenced in the Statement of Purpose for Business Loan.

7) Documentation evidencing use of loan proceeds designated for "working capital," including receipts, invoices, or ledgers reflecting expenditures.

8) Dukes Logistics LLC's balance sheet, profit and loss statement, and cash flow statement for fiscal year 2025 and year-to-date 2026.

9) Dukes Logistics LLC's and Willie J. Dukes's federal tax returns for 2025 (if filed), including all schedules.

# EXHIBIT G

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CASE NO.: 26-56638-jwc |
| | : | |
| WILLIE JAMES DUKES, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| | : | |

**ORDER GRANTING MOTION FOR RULE 2004
PRODUCTION OF DOCUMENTS**

This matter came before the Court upon the Motion of The Huntington National Bank, as successor by merger to Cadence Bank ("Huntington"), for an Order directing Willie James Dukes ("Debtor") to produce documents pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, and having stated good cause;

**IT IS ORDERED, ADJUDGED, AND DECREED**, that on or before 2:00 p.m. on before September 22, 2026 the Debtor shall produce to Huntington, through its counsel Noah W. Priest-

Goodsett of Womble Bond Dickinson (US) LLP located at 1331 Spring Street NW, Suite 1400, Atlanta, GA 30309, the documents as requested in the Motion, attached hereto as **Exhibit A;**

**IT IS FURTHER ORDERED** that Huntington may issue document subpoenas to third parties in connection with this Order to investigate the acts, conduct, property, liabilities, and financial condition of the Debtor and any other matter within the scope of Federal Rule of Bankruptcy Procedure 2004;

**IT IS FURTHER ORDERED** that any document subpoenas issued in connection with this Order will provide the recipients at least twenty-one (21) days to produce any responsive documents, pursuant to Local Rule 2004-1(c), such production to be pursuant to Federal Rule of Civil Procedure 45, as made applicable under Bankruptcy Rule 9016, including all rights, claims, defenses, and protections afforded thereunder;

**IT IS FURTHER ORDERED** that this Order is entered without prejudice to the right of any recipient of a document subpoena to file an objection to some or all of the information requested in the subpoena. If a recipient objects to a document subpoena, it must file an objection within fourteen (14) days from the date of service of the subpoena;

**IT IS FURTHER ORDERED** that if an objection is timely filed by a recipient, Huntington will be allowed fourteen (14) days from the date of the objection to file a response; and

**IT IS FURTHER ORDERED** that to the extent a recipient files an objection as provided in paragraph 5 above, the time to respond to the subpoena for the objecting recipient is extended until the disposition of the objection by the Court only with respect to the portion of the request(s) to which specific objection has been lodged; provided, however, that the objecting recipient shall fully and completely respond within the time provided under paragraph 4 above to any specific

request to which an objection is not timely filed and must similarly timely respond to the portion of any request to which the recipient does not timely object.

# <u>EXHIBIT A</u>

## DOCUMENT REQUESTS

1) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Dukes Logistics LLC for each and every month from May 2025 (loan origination) through and including the Petition Date (May 19, 2026).

2) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Willie J. Dukes for each and every month from May 2025 through and including the Petition Date.

3) Copies of all bank statements, organized in chronological order, for all bank accounts in the name of Marilyn T. Dukes for each and every month from May 2025 through and including the Petition Date.

4) Copies of all bank account check registers, ledgers, and journals detailing account activity maintained by Dukes Logistics LLC for the time period of May 2025 through and including the Petition Date.

5) Documentation identifying and evidencing all disbursements, transfers, or distributions of the $500,000.00 loan proceeds, including the date, amount, source account, and destination account/payee, and the purpose of each disbursement.

6) Copies of any payoff statements, invoices, or other documentation evidencing the "existing debt" refinanced with loan proceeds as referenced in the Statement of Purpose for Business Loan.

7) Documentation evidencing use of loan proceeds designated for "working capital," including receipts, invoices, or ledgers reflecting expenditures.

8) Dukes Logistics LLC's balance sheet, profit and loss statement, and cash flow statement for fiscal year 2025 and year-to-date 2026.

9) Dukes Logistics LLC's and Willie J. Dukes's federal tax returns for 2025 (if filed), including all schedules.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2026, I electronically filed the foregoing Motion using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Howard D. Rothbloom, Esq.
The Rothbloom Law Firm

Jason L. Pettie, Esq.
Gordon and Pettie, LLC

Office of the United States Trustee

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each:

Willie James Dukes
155 Trevers Lake Drive
Covington, GA 30016

By: *<u>/s/ Noah W. Priest-Goodsett</u>*
NOAH W. PRIEST-GOODSETT